UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

    v.

GAYDEN C. WOODSON, JR.                              Crim No. 06-275 (JR)

*Defendant.*

## DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW the Defendant, Mr. Gayden C. Woodson, Jr., by and through his undersigned counsel, W. Scott Lythgoe, and hereby respectfully submits this Memorandum in aide of his anticipated sentencing at the hearing currently scheduled for January 31, 2007. Based on all of the sentencing factors in this case, Mr. Woodson respectfully requests that he be given a sentence consistent with his co-conspirator, Ronald W. Wiseman. Mr. Wiseman was sentenced on October 24, 2006, before this same Court, Criminal No. 05-152 (JR)[1] and on November 9, 2006 before the Honorable David Folsom, United States District Court, Eastern District of

---

[1] Mr. Wiseman was sentenced to an 18 month imprisonment for Conspiracy to Violate the Arms Export Control Act and International Traffic in Arms Regulations, in violation of 22 U.S.C. Sec. 2778(b)(2) and 22 C.F.R. Sec. 127.1(a)(3).

Texas, Case No. 5:05CR00014-001[2].

## BACKGROUND

Mr. Woodson was first interviewed by federal investigators in August 2006. When Mr. Woodson was contacted by the federal investigators, Mr. Woodson admitted to his criminal actions, accepted responsibility, and agreed to cooperate. In this initial interview, Mr. Woodson admitted to taking $100,000.00 in monies from the sale of U.S. government surplus property.

On October 24, 2005, Mr. Woodson appeared before this Court and pleaded guilty to one-count of Conspiracy to Commit Theft of Government Property, in violation of 18 U.S.C. Sec. 371. Later that afternoon, Mr. Woodson was again interviewed by federal investigators as to his involvement in the conspiracy with Mr. Wiseman. The investigators also questioned Mr. Woodson about his own criminal conduct after Mr. Wiseman had been transferred to a new job and location.

On the following day, October 25, 2006, a government official administered a polygraph test to Mr. Woodson which indicated that Mr. Woodson failed to fully disclose his involvement in the sale of High-Mobility Multi-Wheeled Vehicles (HMMWVs), some of which had battle-conditioned features. Soon after this determination, Mr. Woodson spoke with his attorney and revealed to him additional information about his involvement in the sale of HMMWVs. This information was passed along to the federal investigators. This additional information contained

---

[2] Mr. Wiseman was sentenced to a concurrent term of 15 months imprisonment with District of Columbia Case No. 1:05CR00152-JR-1 for Conspiracy to Commit Theft of Government Property, in violation of 18 U.S.C. Sec. 371.

details the federal investigators were expecting to confirm through the polygraph test.

## ARGUMENT

Mr. Woodson argues that his sentence should be consistent with the sentence given to Mr. Wiseman because Mr. Woodson and Mr. Wiseman were engaged in similar bad acts and neither have any prior criminal convictions. Mr. Wiseman was a co-conspirator with Mr. Woodson. Together they took several hundred thousand dollars from sales of U.S. government surplus property in Southwest Asia. As a result of Mr. Wiseman's plea agreements with federal prosecutors, Mr. Wiseman was sentenced before this Court to eighteen months of incarceration and to a concurrent term of 15 months in the United States District Court, Eastern District of Texas.

Currently, Mr. Woodson's Presentence Investigation Report found a total offense level of 17, a criminal history category I, and a guideline range for imprisonment of 24 to 30 months[3]. In a letter dated January 9th, 2007[4], Laura A. Ingersol, Assistant United States Attorney, stated that Mr. Woodson had breached his plea agreement by failing the government administered polygraph test.

As a result, Ms. Ingersol stated that the defendant's conduct constitutes Obstructing or Impeding the Administration of Justice, within the meaning of U.S.S.G. Sec. 3C1.1, and that a two level upward adjustment is therefore warranted. Moreover, Ms. Ingersol stated that in light

---

[3] Presentence Investigation Report prepared by Kathie McGill, U.S. Probation Officer and approved by Mark McCroson, Supervising U.S. Probation Officer, prepared 12-28-06.

[4] Letter from Laura A. Ingersol, Assistant U.S. Attorney to Ms. Kathie McGill, United States Probation Officer, dated January 9, 2007, courtesy copy sent to W. Scott Lythgoe, attorney for Gayden Woodson.

of Mr. Woodson's false statements the government will not move for a third-level reduction contemplated by U.S.S.G Sec. 3E1.1(b). Based upon Ms. Ingersol's position, she states that the Total Offense Level is 20 rather than 17 with a guideline range of 33-41 months.

Therefore, based upon Mr. Woodson's failure to fully disclose, the United States Attorney's Office argues that Mr. Woodson should spend approximately twice the amount of time in federal prison as Mr. Wiseman. Mr. Woodson contends that based upon United States v. Booker, 543 U.S. 220 (2005), and the sentencing factors in 18 U.S.C. Sec. 3553(a), a sentence less than a full term of incarceration would be appropriate in this case.

The factors identified in 18 U.S.C. Sec. 3553(a) specifically support Mr. Woodson's request. These include: "The nature and circumstances of the offense and the history and characteristics of the Defendant; . . . the kinds of sentences available; . . . the need to avoid unwarranted sentence disparities among Defendants with similar records who have been found guilty of similar conduct; and . . . the need to provide restitution to any of the victims of the offense." 18 U.S.C. 3553 (a). Furthermore, pursuant to 18 U.S.C. Section 3661: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a Court of the United States may receive and consider for the purposes of imposing an appropriate sentence."

After considering all of the factors set forth in Section 3553 (a), the Court must impose a sentence "that reflect[s] the seriousness of the offense, promote[s] respect of the law, provide[s] just punishment, afford[s] adequate deterrence, protect[s] the public, and effectively provide[s] the Defendant with needed education or vocational training and medical care." 18 U.S.C. Sec. 3553 (a)(2)) With that limitation and considering all of the purposes of sentencing, the Court

"shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph [(a)] (2) [of Section 3553]." 18 U.S.C. Section 3553 (a).

A review of all of the applicable factors set forth in Sec. 3553(a) and the sentence given to Mr. Woodson's co-conspirator, Mr. Wiseman, demonstrates that a sentence of 33 to 41 months of incarceration would not be warranted in this matter. The Court should consider Mr. Woodson's immediate acknowledgment of his wrongdoing, his early plea and immediate cooperation with law enforcement officials.

Mr. Woodson is 46 years old and he currently resides in North Ogden, Utah. Mr. Woodson's strong employment history reflects his commitment to being a productive citizen. The fact that Mr. Woodson has no criminal history speaks volumes with respect to his character. Throughout his life Mr. Woodson has tried to do the right thing[5] – up to the beginning of his relationship with Mr. Wiseman in Southwest Asia. Even in this case, Mr. Woodson admitted to having committed a serious mistake. Mr. Woodson waived his right to an indictment, he waived his right to file any Pretrial Motions, he accepted responsibility from the day he was confronted, and he pleaded guilty in a timely fashion.

In addition to the above, Mr. Woodson helped fix the serious accountability flaw in the Defense Reutilization and Management System ("DRMS") – the tracking system Mr. Woodson and Mr. Wiseman took advantage of previously. In March of 2003, Mr. Woodson proposed a plan to the Defense Reutilization Management Office ("DRMO") to address this accountability flaw. In July 2003, DRMO adopted Mr. Woodson's program. Mr. Woodson's program turned the serious accountability flaw – where 0% was the standard – to a standard of 100%

---

[5] See attached letter written by Mr. Woodson's step-daughter Marissa Gillett.

accountability. Mr. Woodson was responsible for all U.S. government surplus property in the countries of Oman, Qatar, and United Arab Emirates. With Mr. Woodson's newly adopted system, the accountability for property under his jurisdiction was 100%. In fact, in October 2005, DRMO sent Mr. Woodson to trouble shoot and fix serious accounting problems in Kuwait. At that time in Kuwait, hundreds of thousands of dollars of surplus property could not be found and was being "written-off."

Mr. Woodson does not dispute that his actions warrant incarceration. Anyone who abuses a position of trust such as Mr. Woodson, and takes government funds for his own personal use, should be incarcerated as a form of punishment. However, Mr. Woodson contends that he has been more forthcoming about the extent of the theft than has his co-conspirator, Mr. Wiseman[6]. As such, Mr. Woodson contends that his sentencing should not be any more severe than Mr. Wiseman's sentence.

Originally, Mr. Woodson admitted to stealing over $100,000 in funds obtained from the sale of government surplus property. Prior to his admission of guilt before this court, Mr. Woodson augmented his admission to an additional $242,000 in theft of government funds[7]. Mr. Woodson contends, and federal investigators have indicated to Mr. Woodson's attorney, that co-

---

[6] Mr. Wiseman admitted to taking more than $108,000.00 in funds from sales of U.S. government surplus property. Among the government surplus property was High-Mobility Multi-Wheeled Vehicles (HMMWVs), some of which had battle-conditioned features. See U.S. v. Wiseman, Criminal No. 05-152 (JR), Government's Sentencing Memorandum.

[7] Mr. Woodson's plea agreement, dated 9-5-06, indicates a total offense level of 13 based in part on $100,000.00 being the Specific Offense Characteristic, warranting an offense level of 8. At the time Mr. Woodson entered his plea of guilty before this court, he admitted the loss to be $342,000.00, which warrants a Specific Offense Characteristic offense level of 12 in accordance with USSG Sec. 2B1.1(b)(1)(G).

conspirator Mr. Wiseman took much more money than he admitted to in his plea agreement.

Despite the above, because Mr. Woodson failed to fully disclose during the polygraph test all of his involvement in the sale of HMMWVs, the prosecutor has asked for a two level upward adjustment for obstructing or impeding the administration of justice. Also, the prosecutor has stated she will not motion the court for a 1-level reduction for Mr. Woodson's timely notice of his intention to plead guilty. Additionally, the government has decided not to motion the Court to set aside the plea agreement and file new and or additional charges against Mr. Woodson.

Mr. Woodson recognizes the restraint of the United States Attorney's Office regarding its decision not to seek new or additional charges. Further, Mr. Woodson recognizes the likelihood of the United States Attorney's office prevailing on a motion to set aside Mr. Woodson's plea agreement. That being said, the fact remains that Mr. Woodson has pleaded guilty to one count of Conspiracy to Commit Theft of U.S. Government Property. Whereas, Mr. Wiseman has pleaded guilty to two separate counts and sentenced as noted above. Furthermore, Mr. Woodson has disclosed all funds he took from the United States government, unlike Mr. Wiseman[8], and his restitution will be $232,000 more than Mr. Wiseman's restitution.

For all of the above reasons, Mr. Woodson contends that the Court would be justified in its departure based upon the relevant sentencing considerations set forth in Section 3553 (a) and

---

[8] Federal Investigators indicated to Mr. Woodson's attorney that Mr. Wiseman was following in the steps of others who originated the conspiracy and also illegally took unknown sums of money from the U.S. government – if Mr. Wiseman's and Mr. Woodson's theft are any indication, the sums these prior individuals likely took would probably be several hundreds of thousands of dollars. However, due to the limitations of federal law, federal investigators are unable to seek indictments against these individuals.

sentence Mr. Woodson to 18 months in a federal prison. At a minimum, Mr. Woodson contends that he should be entitled to a 1-level downward departure for his timely notice of his intention to plead guilty pursuant to U.S.S.G. Sec. 3E1.1(b).

## **CONCLUSION**

Therefore, Mr. Woodson requests that the Court take into consideration the sentences given to Mr. Wiseman and make his sentence consistent with that of his co-conspirator.

DATED this 26th day of January, 2007.

_____/s/_____
W. SCOTT LYTHGOE
Utah Bar No. 7928
Coggins, Larreau & Lythgoe, P.C.
289 24th Street, Ste 150
Ogden, UT 84401
Phone (801) 393-5555
Fax (801) 392-1637
Email: scott@lythgoelaw.com